

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHIRLEY AUSTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-1687-M |
| | § | |
| WAL-MART STORES TEXAS, L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment and Motion to Strike. Wal-Mart Stores Texas, L.P. ("Wal-Mart") requests summary judgment with respect to the following claims of Plaintiff Shirley Austin: (1) that Wal-Mart discriminated against Austin on the basis of age in violation of § 21.051 of the Texas Labor Code; (2) that Wal-Mart discriminated against Austin on the basis of religion in violation of the same statute; and (3) that Wal-Mart defamed Austin. Wal-Mart additionally requests that this Court strike Austin's claim of a failure to accommodate her religion. For the reasons set forth below, the Court **DENIES** Wal-Mart's Motion to Strike and **GRANTS** Wal-Mart's Motion for Summary Judgment in its entirety.

### I. FACTUAL BACKGROUND

Wal-Mart hired Austin as a cashier in 1999, when Austin was forty-four years old. In her employment application, Austin stated that she was unavailable for work on Saturdays and Sundays. Upon her hiring, she told a Wal-Mart representative that she was unavailable because she was a minister at her church. The Wal-Mart representative conveyed to Austin that the company would allow her to have Saturdays and Sundays off. As acknowledged by Wal-Mart, Austin performed well at work.

On September 23, 2004, Austin filled out a Wal-Mart form indicating her availability to work on both Saturdays and Sundays. She claims that it was the store's manager, John Thompson, who required her to confirm weekend availability. Wal-Mart claims that Austin never worked on a Saturday or Sunday between September 23, 2004 and her later termination. Austin disputes this, contending she worked at least one or two weekend days during that time frame.[1]

On December 24, 2004, Shenequa Epperson, an off-duty cashier at Wal-Mart, reported to another Wal-Mart employee that Austin had checked her out, but had not charged her for all of the items. Epperson claimed that Austin had scanned certain items, voided the charges, and then placed those items in Epperson's shopping bags. Thompson and District Loss Prevention Supervisor Pam Lane both investigated Epperson's report. According to his declaration, Thompson watched a video of the transaction, obtained written witness statements, reviewed Epperson's cash register receipts, and then gave Austin an opportunity to respond.

The videotape that Thompson says he viewed was overwritten by Wal-Mart and is no longer available. Thompson claims the videotape showed Austin scan, void the sales of, and then bag a number of products for Epperson. Epperson gave a statement to Thompson, claiming she told Austin she did not want to exceed three hundred dollars in purchases, so she was selecting only necessities until that amount was reached. Austin scanned items Epperson had not selected, then voided the sales and placed the items in Epperson's bag. While voiding the items, Epperson claims Austin stated "You see what I'm doing." Epperson claims to have told Austin not to place fruit in her bag after Austin had voided the sale of the fruit. Epperson claims that after Austin finished processing her purchases, Austin hugged her, saying "God is so good," and

---

[1] There is a dispute over whether Austin claimed to have needed Saturdays off from work or just Sundays. The dispute is immaterial to the Court's decision.

then asked Epperson to return the fruit to the customer service desk. Epperson says Austin did not make such a request about the other items. Epperson then reported the alleged under-ringing to a Wal-Mart employee and paid for the bagged items she had not paid for. Thompson's review of the receipts showed that various items were scanned and the sales then voided, and that Epperson paid for them minutes later. Katina Reese, another cashier, provided a statement supporting Epperson's contention that Austin asked Epperson to return the fruit, but not other items not paid for, to the customer service desk.

Austin generally contests Wal-Mart's version of the facts. She says she directed Epperson to return *all* of the items for which the sales were voided to the customer service desk. She claims that Epperson and Reese lied to Thompson.

On December 30, 2004, Thompson terminated Austin's employment for her violation of Wal-Mart's policy against under-ringing, which is defined as "[r]inging merchandise for less than the actual retail price." Austin claims she discussed the alleged under-ringing incident with two of her co-workers, and that one of them, Paulette Johnson, informed Austin that, after Austin's termination, Epperson told her that she had been untruthful about Austin, and that in fact Austin had told Epperson to return to the customer service desk all of the items not paid for. Austin also claims that at about the time of her termination, Thompson and Lane made derogatory comments about her use of the phrase "God is good all the time." Pl.'s App. Ex. A at 148, 252.

Austin also contends that Roberto Carranza, the floor manager at Austin's store, made age-discriminatory remarks to Austin, which she reported to two other managers, Michael Fuller and Lincoln Williams, and to Thompson.[2] She alleges that her complaints were ignored.

## II. MOTION TO STRIKE

Wal-Mart moves, on two grounds, for this Court to strike Austin's claim that Wal-Mart failed to accommodate her religion. Wal-Mart first contends that this Court lacks jurisdiction to consider the claim, due to Austin's failure to exhaust her administrative remedies. Alternatively, Wal-Mart alleges that the claim was not presented timely, as Austin first raised it in her response to Wal-Mart's Motion for Summary Judgment.

Before the Court reaches Wal-Mart's primary contention regarding exhaustion of administrative remedies, the Court considers whether Austin's failure-to-accommodate claim was timely presented. It is well-settled in the Fifth Circuit that a legal claim raised for the first time in response to a defendant's motion for summary judgment is not properly pled. *Fisher v. Metro. Life Ins.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher*, 895 F.2d at 1078). Wal-Mart argues that Austin's response, contending Wal-Mart failed to accommodate her religion, raises a new claim. The Court disagrees that the claim is new.

---

[2]Although Austin's briefing claims she notified Fuller, Williams, and Thompson of Carranza's allegedly discriminatory comments, her deposition testimony, which she cites in support, belies the contention. When asked at her deposition about her conversations with Fuller, Austin stated that she "just told [Fuller] that [Carranza] was being rude, being very rude to me, and I wasn't getting my breaks and my lunches like I should." Pl.'s App. Ex. A at 85. Additionally, no evidence cited by Austin supports the conclusion that she reported Carranza's statements to either Williams or Thompson.

Austin's original state court petition "pleads a cause of action against Defendant for religious discrimination"[3] pursuant to § 21.051 of the Texas Labor Code, which provides as follows:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE § 21.051. Another provision relates religious discrimination claims to failure-to-accommodate claims:

> A provision in this chapter referring to discrimination because of religion or on the basis of religion applies to discrimination because of or on the basis of any aspect of religious observance, practice, or belief, unless an employer demonstrates that the employer is unable reasonably to accommodate the religious observance or practice of an employee or applicant without undue hardship to the conduct of the employer's business.

TEX. LAB. CODE § 21.108. A plaintiff establishing an adverse employment action as a result of her religious observance, practice, or belief is entitled to relief unless her employer demonstrates that accommodation of the religious action or belief would impose an undue hardship on the employer's business. Interpreting the reference to religious discrimination to encompass a failure to accommodate is also consistent with *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). In *Swierkiewicz*, an employment discrimination suit, the Supreme Court reiterated that Federal Rule

---

[3]Austin's original state court petition states the following regarding discrimination on the basis of religion:
Plaintiff, Shirley Austin, pleads a cause of action against Defendant for religious discrimination pursuant to Chapter 21, Texas Labor Code, Section 21.051. Plaintiff will show that her religion is Holiness, and that she was adversely affected because of her religion when she was terminated from her position with Defendant. Plaintiff will further show that she was qualified for her position from which she was terminated. Plaintiff has met all perquisites [sic] to filing this suit as evidenced by Exhibit "A". As a direct and proximate result of said discrimination, Plaintiff has suffered damages, for which she pleads for recovery at trial in the amount of $100,000.

of Procedure 8(a)(2) is designed to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (internal quotation marks omitted). Rather than requiring strict construction of a plaintiff's complaint, "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* It is true that the detail Austin provides on the religious discrimination claim refers only to her termination, but her termination is not stated to be the only basis for her claim of religious discrimination. The Court concludes that Austin's reference to Wal-Mart's failure to accommodate her religious belief is not a new claim first raised in response to the motion for summary judgment, and finds the claim properly before the Court.

The next question raised in the Motion to Strike is whether Austin exhausted her administrative remedies for the failure-to-accommodate claim. This Court may only consider claims under the Texas Commission on Human Rights Act ("TCHRA")[4] "if the plaintiff has exhausted [her] administrative remedies." *Harris v. Honda*, No. 3:04-CV-2629-M, 2005 WL 2416000, at *1 (N.D. Tex. Sept. 30, 2005) (Lynn, J.). "A plaintiff may raise only the specific issue made in the employee's charge and 'any kind of discrimination like or related to the charge's allegations.'" *Id.* (quoting *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied)). Austin's charge stated: "I was subjected to a hostile work environment in that the store manager and other management officials made derogatory comments about my religion and request to not work on Sundays"; "I believe I have been discriminated against because of my religion, Holiness, in violation of Title VII of the Civil Rights Act of 1967." The question is whether a failure-to-accommodate claim is "like or related

---

[4]TEX. LAB. CODE §§ 21.001-.556.

to" Austin's charge. *See Harris*, 2005 WL 2416000, at *1. For two reasons, the Court finds that it is.

First, as analyzed above, this Court concludes that a charge of discrimination on the basis of religion encompasses a failure-to-accommodate claim. Second, Austin's charge expressly included a failure-to-accommodate claim when she referred to her "request to not work on Sundays."

In holding that the failure-to-accommodate claim should not be stricken, the Court observes the Fifth Circuit's admonition that charges of employment discrimination are to be interpreted "with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading. We also take into account the principal function of the administrative charge: the provision of an adequate *factual* basis" for an administrative investigation. *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) (internal citation omitted) (emphasis added).

The Court thus **DENIES** Wal-Mart's Motion to Strike.

### III. ANALYSIS

*A. Standard of Review*

Summary judgment is warranted when the facts as shown in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Pourgholam v. Advanced Telemarketing Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it

believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding the evidence favorable to the movant that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch*, 140 F.3d at 625. Further, the party opposing summary judgment must do more

than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## B. Age Discrimination

The TCHRA "provide[s] for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE § 21.001. Among other things, it proscribes employment discrimination on the basis of the age of an employee. TEX. LAB. CODE § 21.051. On motions for summary judgment, where, as here, there is no direct evidence of age discrimination, the Court is to analyze TCHRA claims under a modified *McDonnell Douglas* approach.[5] *Keelan*, 407 F.3d at 341 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under this framework,

> the plaintiff must . . . demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"

*Rachid*, 376 F.3d at 312 (alteration in original) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)). Should a plaintiff demonstrate "that age was a motivating factor in the employment decision, it then falls to the defendant to prove 'that the

---

[5] Although the TCHRA is a state enactment, "[t]he law governing claims under the TCHRA and Title VII is identical." *Reynolds v. Dallas Area Rapid Transit*, No. 3:98-CV-982-M, 2000 WL 1586444, at *5 (N.D. Tex. Oct. 20, 2000) (Lynn, J.) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403-04 n.2 (5th Cir. 1999)).

same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.'" *Id.* at 312-13 (quoting *Mooney v. Aramco Servs.*, 54 F.3d 1207, 1217 (5th Cir. 1995)). Despite the shifting nature of the burdens in the modified *McDonnell Douglas* approach, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

This Court will examine each prong of the modified *McDonnell Douglas* framework in turn.

*1. Austin's prima facie case of age discrimination*

To establish a prima facie case of age discrimination, from which a presumption of discrimination arises, Austin must establish that "(1) [she] was discharged; (2) [she] was qualified for the position; (3) [she] was within the protected class at the time of discharge; and (4) [she] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (internal quotation marks omitted) (quoting *Rachid*, 376 F.3d at 309); *see Cornish v. Dallas Police Ass'n*, No. 3:04-CV-49-M, 2005 WL 3434390, at *3 (N.D. Tex. Dec. 13, 2005) (Lynn, J.). Wal-Mart does not challenge Austin's contentions as to the first three prongs: Austin was terminated from her position as a cashier in December 2004; she was qualified for the position; and she was fifty years old, and thus within the protected class at the time of her discharge. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (TCHRA and ADEA age discrimination protections apply to those above forty years of age). The dispute focuses on the fourth prong.

To satisfy the fourth prong, Austin must show that she was replaced by someone younger or otherwise discharged because of her age.[6] *Machinchik*, 398 F.3d at 350. Thus, this Court scrutinizes Austin's evidence for proof of either proposition. The only evidence Austin offers to satisfy the fourth prong is her own deposition, where she states that a friend informed her that someone younger replaced her. Wal-Mart maintains that such testimony is conclusory and unsupported.[7] While Austin's statement may suffer from other, unasserted evidentiary deficiencies, such as hearsay, her deposition testimony will not be stricken as "conclusory and unsupported," and the Court thus assumes that she was "replaced by someone younger." Austin therefore meets her burden of setting forth a prima facie case of age discrimination.

2. *Pretext*

Once Austin establishes a prima facie case of age discrimination, the burden falls on Wal-Mart to articulate a nondiscriminatory rationale for its termination of Austin. *Rachid*, 376 F.3d at 312. "This burden is one of production, not persuasion." *Reeves*, 530 U.S. at 142. Wal-Mart meets this burden by showing that it terminated Austin for under-ringing. The burden then shifts once again to Austin to demonstrate that Wal-Mart's proffered rationale for her discharge is either a pretext or that it is a mixed-motive explanation with discrimination playing a part in the decision. *Rachid*, 376 F.3d at 312. "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902-03

---

[6]Wal-Mart argues that the fourth prong can be met *only* by establishing more favorable treatment by Wal-Mart of similarly situated, younger employees. *See Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). In support, Wal-Mart cites to an opinion of the Supreme Court of Texas, where the court noted that according to the Fifth Circuit, the plaintiff in discrimination cases "must *usually* show" favorable treatment to similarly situated employees. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 918 (Tex. 2005) (emphasis added). In fact, however, "[t]reating younger workers more favorably is not the *only* way to prove age discrimination." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003) (emphasis added). The Fifth Circuit has held that a plaintiff may prove that she was otherwise discharged because of her age. *Machinchick*, 398 F.3d at 350.

[7]Wal-Mart offers evidence that seven employees under the age of forty who were caught under-ringing were terminated. While such may be probative to the Court's analysis of pretext, the evidence is inapposite in the context of Austin's prima facie case: it does not refute Austin's claim that she was replaced by a younger employee.

-11-

(5th Cir. 2000). "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id.* at 903.

In support of its allegedly non-discriminatory reason for terminating Austin, Wal-Mart maintains that Epperson reported to an employee that Austin failed to charge her for certain items that she scanned, by voiding the charges and then placing the items in her shopping bag. After an investigation, the store manager, Thompson, concluded that Austin had under-rung and thus decided to terminate her.

Austin offers the following to establish that Wal-Mart's proffered explanation is pretext[8]: (1) Carranza, the Floor Manager, made a number of ageist comments to Austin, which she

---

[8] Austin also attacks Wal-Mart's summary judgment evidence as lacking credibility for three reasons: (1) the document prepared at the time of her termination states the reason for discharge as "Loss Prevention Investigation," not under-ringing; (2) Wal-Mart's summary judgment documents are not authenticated, verified, or sworn to; and (3) Wal-Mart denied Austin access to the above-register videotape of the alleged under-ringing. Austin's first contention attempts to confuse a simple issue. The record makes clear that a "Loss Prevention Investigation" is simply an investigation conducted pursuant to suspicion of "loss," in this case under-ringing. Lane, a Loss Prevention Supervisor, assisted Thompson in his investigation, and Thompson makes clear that the investigation regarded alleged under-ringing. Austin cannot claim now in her briefing that she was unaware that suspected under-ringing led to her termination when, in her deposition, she describes her conversation with Thompson as relating to charges of under-ringing. Austin's second argument also lacks merit. All of the exhibits in the appendix to Wal-Mart's Motion for Summary Judgment are incorporated by reference in the Declaration of Brad Spalding, who, under penalty of perjury, attests to their identity and authenticity. These exhibits therefore comply with Federal Rule of Civil Procedure 56(e). *Feltner v. Partyka*, 945 F. Supp. 1188, 1191 (N.D. Ind. 1996); *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 314 (S.D.N.Y. 1998). As for Austin's final contention, the Court is unclear what Austin requests. According to Wal-Mart, the videotape was mistakenly overwritten. If Austin intends to imply foul play, she presents no summary judgment evidence to support the implication. However, the Court is troubled by Wal-Mart's explanation for its failure to produce the videotape. Austin apparently requested the videotape from Lane, who advised her to retain counsel to gain access to the tape. Austin did exactly as she was advised, but to no avail. However, even were the Court to treat the destruction of the videotape as an act of spoliation, and thus to permit an adverse inference to be drawn against Wal-Mart, it would not change the fact that Thompson had and relied on other evidence when deciding to fire Austin—Epperson's first-hand account of the incident and the receipts of the transactions. *See generally Condrey v. SunTrust Bank*, 431 F.3d 191, 203 (5th Cir. 2005). Furthermore, given that the videotape apparently contained no audio track, a review of the tape could not prove or disprove that Austin said anything in particular, including whether or not she sent Epperson to the customer service desk to return all or some of the items. Wal-Mart does not dispute that Austin sent Epperson to the customer service desk. Its claim, based on Epperson's statement, is that Austin under-rang a number of items for Epperson and only asked her to return *some* of them. Austin provides no basis for the Court to conclude that a review of the videotape would support the contention that the general statement she claims to have made to Epperson regarding the items—"I'm sending this back up front, y'all"—was meant to apply to all, and not just some, of the items. For these reasons, Austin's inability to review the missing videotape does not change the Court's conclusion.

reported to various managers who ignored her complaints, and (2) Epperson lied to Thompson regarding the alleged under-ringing, as allegedly later acknowledged by Epperson.[9]

The critical inquiry in evaluating Austin's evidence is whether she has raised a genuine issue of material fact as to Wal-Mart's purported good-faith belief that Austin violated the policy on under-ringing. *See Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993). Wal-Mart's motive is the focus of the Court's inquiry: The truth of the under-ringing allegation is of import only as it implicates that motive. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

Austin first argues pretext by pointing to a number of comments made by Carranza.[10] "Such remarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996). The comments certainly concern Austin's age, but there is no argument advanced or evidence adduced by Austin to show how they satisfy the remaining three requirements. Most significantly, the comments were not made by Thompson, the manager who fired Austin, and there is no evidence suggesting any connection between Carranza's comments and Thompson's actions in terminating Austin. In

---

[9] Austin also argues that to find under-ringing, Wal-Mart must find intent by her to give special favors to friends, relatives, neighbors, or accomplices. The Court is unpersuaded by Austin's interpretation. Wal-Mart's policy statement unambiguously defines under-ringing without reference to intent, although intent is mentioned in the policy:

> *Ringing merchandise for less than the actual retail price is called under-ringing.* Under-ringing is a violation of Company policy. Associates operating a register must not checkout any members of their family. Attempting to give special favors to friends, relatives, neighbors, or accomplices constitutes grounds for immediate termination and/or prosecution of the Register Operator.

Pl.'s App. Ex. D (emphasis added). In any case, the Court finds that Thompson could have found she intended to benefit a "friend," Epperson, and that no further evidence was required for him to do so.

[10] Carranza allegedly stated that he needed younger employees, and that younger employees would "get the job done" without as many complaints. Pl.'s App. Ex. A at 84, 86.

fact, there is no evidence that Thompson had any knowledge whatsoever about Carranza's comments. The Court therefore finds the comments unrelated to the action taken by Thompson to terminate Austin.

Austin next argues that she attempted to report Carranza's behavior to Thompson (and others) but was merely brushed aside and ignored, and that this is relevant to pretext. In support, she directs the Court to her own deposition. The deposition testimony suggests that Thompson may have been rude and unresponsive to Austin,[11] but not that Austin reported Carranza's behavior or comments to Thompson or that he ignored complaints of age discrimination. When asked directly about whether she interpreted Thompson's behavior as harassing or discriminatory, Austin referenced race, not age, discrimination.[12] Austin's contention that Thompson ignored her complaints of age discrimination is unsupported by any evidence that she told him of such complaints and thus merely makes reference to what she sees as Thompson's general disposition towards her: rude and unresponsive. This would be unkind if true, but it is not in and of itself indicative of age discrimination.

Austin's final argument as to pretext focuses on establishing her innocence of the alleged under-ringing. Even if Epperson later confessed that she fabricated the statement to Wal-Mart, that is plainly irrelevant to the issue of Thompson's motive, since Epperson allegedly confessed

---

[11]In response to a question regarding general problems that Austin had with Thompson prior to termination, she states:
> Like when you wanted to—say, for instance, when I wanted to talk to him pertaining to a matter or something, he would just like brush you off. He would tell you—he would tell me—me, you—you can handle it. We don't need nobody tattle telling, as—as he's [sic] call it. You know, we don't need—we don't need that. You can—you can do it, you know. He would never take out time to just listen and to what I had to say. It was always rude. Very rude.

Pl.'s App. at 23.

[12]Austin responded in full by stating:
> Yes, because when I say that is because when I come to him and would try to talk to him about things, he would brush me off. But when someone else—a different racial [sic] come to him, he would talk to them, and I'm standing right there looking at him.

Pl.'s App. at 23.

*after* Austin's termination.[13] The real issue is whether Thompson, on Wal-Mart's behalf, reasonably believed Epperson's allegation and acted on it in good faith, or whether he used Epperson's allegation as a pretext for an otherwise discriminatory dismissal. *Waggoner*, 987 F.2d at 1165.

Austin is thus left with no evidence supporting her claim that Wal-Mart's proffered reason for terminating her is pretext. For this reason, the Court **GRANTS** Wal-Mart's Motion for Summary Judgment as to Austin's claim of age discrimination.

### C. Religious Discrimination

There are two ways for Austin to establish a prima facie case of discrimination on the basis of religion under § 21.051 of the Texas Labor Code. *See Lynch v. Baylor Univ. Med. Ctr.*, No. 3:05-CV-931-P, 2006 WL 2456493, at *6 (N.D. Tex. Aug. 23, 2006) (Solis, J.). The first requires her to satisfy the four elements of the modified *McDonnell Douglas* framework. *See Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000). The second requires her to demonstrate that she had a *bona fide* religious belief conflicting with an employment requirement, that the employer was aware of the belief, and that she suffered an adverse employment action for failing to comply with the conflicting requirement.[14] *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000); *Stolley v. Lockheed Martin Aeronautics Co.*, No. 4:04-CV-303-Y, 2006 WL 2583198, at *3 (N.D. Tex. Aug. 30, 2006) (Means, J.). The Court finds that Austin cannot satisfy either of these approaches.

---

[13] Austin was asked during her deposition if Epperson admitted to lying to Thompson *after* Austin's termination. She responded "Yes ma'am." Pl.'s App. Ex. A at 146.

[14] Wal-Mart argues that Austin failed to exhaust her administrative remedies with respect to the claim that Wal-Mart discharged her because of her religion. It is unnecessary to address the argument as the Court disposes of Austin's discrimination claim on other grounds. Suffice it to say, however, that for reasons similar to those mentioned in the above discussion of administrative exhaustion, the Court would find the factual basis provided by Austin in the charge—that management officials made derogatory comments about her religion—sufficient to exhaust her administrative remedies and to allow this Court to hear her claim.

With respect to Austin's claim under the modified *McDonnell Douglas* framework, the Court assumes, *arguendo*, that Austin can establish a prima facie case, but she has not proven pretext or discriminatory motive. Austin alleges that Wal-Mart fired her because of her religion. Wal-Mart articulates the same nondiscriminatory rationale discussed above to explain Austin's discharge: under-ringing based on Thompson's investigation. Austin offers as proof of pretext or discriminatory motive two statements made by Thompson and Lane. On one occasion, Thompson apparently accused Austin of signaling to Epperson during the under-ringing by stating "God is good all the time." Pl.'s App. at 148. Austin testified in her deposition that Lane made the same statement to Austin. Pl.'s App. at 252. These statements are insufficient to establish pretext or discriminatory motive. On their face, they indicate only that Thompson and Lane suspected Austin of using a religious phrase in furtherance of the alleged under-ringing. In no way do they suggest either that Thompson masked discriminatory animus in firing Austin because of under-ringing or that discriminatory motive animated Thompson's decision, in whole or in part. The fact that Wal-Mart fired seven employees caught under-ringing in the two years prior to Austin's termination also demonstrates that Wal-Mart terminates employees who under-ring, thus eliminating the religious discrimination motive. No evidence offered by Austin counters the conclusions compelled by Wal-Mart's evidence that she was fired because she was thought guilty of under-ringing, and that the decision would have been made whether or not Thompson suspected her of using a religious signal.

With respect to Austin's failure-to-accommodate claim, the Court finds that Austin has not established a prima facie case. She claims that Wal-Mart failed to accommodate her need not to work on Saturdays or Sundays, by requiring her to be available on those days.[15] To establish a

---

[15] Wal-Mart denies requiring Austin to change her availability, claiming instead that Thompson requested Austin to authorize the changes, which she initialed on an availability time sheet.

prima facie case, Austin must prove that she suffered an adverse employment action for failing to comply with an employment requirement that conflicted with a *bona fide* religious belief about which her employer knew. *See Weber*, 199 F.3d at 273. Neither the nature of her religious belief nor the awareness of the belief by Thompson are in dispute. Wal-Mart contends that Austin never actually worked a Saturday or Sunday and that Austin was not "discharged for failing to comply with the conflicting requirement" that she work on those days. *Weber*, 199 F.3d at 273. The factual dispute about whether Austin worked on any Saturday or Sunday is irrelevant, however, because Austin does not contest Wal-Mart's position that she was *not* terminated for failing to work on the weekend, but instead she advances the theory that the allegedly "unilateral" availability change, made without an individualized assessment to determine whether an undue hardship would result from accommodation, is independently actionable. Austin offers no authority, and the Court is aware of none, to support the notion that *acquiescence* in a business requirement that conflicts with a religious belief is sufficient to allege a prima facie case of religious discrimination. She must show that failure to comply with the requirement resulted in an adverse employment action. With respect to the failure-to-accommodate claim, she has not done this. The Court thus **GRANTS** Wal-Mart's Motion for Summary Judgment as to Austin's claim of discrimination on the basis of religion.

### D. Defamation

To show defamation, Austin must prove that Wal-Mart "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence . . . regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Austin claims in her responsive pleading that Wal-Mart defamed her by informing its employees and customers that she had been terminated for stealing or giving a customer items. Austin's briefing suggests that Wal-Mart must be responsible for the publication, as she did not publish

the fact that she was terminated. Austin's deposition testimony directly contradicts the logic of this proffered inference: she admits she told at least two co-workers about the incident, before and after her termination.

There is no competent summary judgment evidence supporting Austin's claim that Wal-Mart published any defamatory statements about her, and this Court declines her invitation to draw an inference that relies in part upon the existence of facts directly contradicted by Austin's deposition testimony. The Court therefore **GRANTS** summary judgment for Wal-Mart with respect to Austin's claim of defamation.[16]

### IV. CONCLUSION

For the foregoing reasons, Wal-Mart's Motion to Strike is **DENIED**, and its Motion for Summary Judgment is **GRANTED** in its entirety.

**SO ORDERED.**

October 5, 2006.

_____
BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
**NORTHERN DISTRICT OF TEXAS**

---

[16] Austin offers evidence of allegedly defamatory statements made by non-managerial Wal-Mart employees. She does not appear to claim relief from Wal-Mart for these statements. Nevertheless, the claim would fail were she to do so. She offers nothing to rebut Wal-Mart's evidence that, in making the allegedly defamatory statements, these employees were neither agents of Wal-Mart nor acting within the scope of their duties to Wal-Mart. *See Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 289 (Tex. App.—Corpus Christi 2000, pet. denied).